## Seth Williams *versus* Jonathan Ingell.

If a record in the book of proprietors of common lands be a distinct record of a vote of the proprietors at a regular meeting, granting to one of their number a parcel of the common land to be held by him in severalty, and locating and describing it by definite and intelligible terms, *it seems* the effect of such vote *in giving* a title *to* take and hold in severalty, cannot be controverted by parol evidence.

But if the entry be not the record of a vote of the proprietors, but may be either the act of the proprietors or the act of the clerk or other officer, the book itself being ambiguous in this respect, *it seems* that parol evidence is admissible to show by whom and with what intent the entry was made.

Where the record in such a book was, "Aug. 13, 1742. At the request of S. W. is granted to the right of W. P. half an acre," it was *held*, that this grant did not enure *to the benefit of* S. W. *without proof* that he derived some title under W. P.

In an action for land, a judgment in a former action in which the parties were reversed, that the then plaintiff was entitled to the land up to a certain line, *is not* evidence that the present plaintiff was entitled to the land on the other side of the line; as the plaintiff, in each case, must recover upon the strength of his own title and not upon the weakness of his adversary's.

Writ of entry. At the trial, before *Dewey* J., the plaintiff offered in evidence a record of a grant by the proprietors of common and undivided lands in Taunton, as follows : — " Aug. 13, 1742. At the request of Samuel Williams Esq. is granted to the right of William Phillips half an acre in the ten acre division." He likewise produced the will of Samuel Williams and the will of Seth Williams, containing words sufficient to pass the land in question, provided the testators were seised of it ; and he derived his title under these wills.

Job Godfrey, the present clerk of the proprietors, testified that the usual mode in which a title was gained from the proprietors, was by a grant like the one above referred to, followed by a location made by a committee of the proprietors, and that when no location had been made within ten years after the grant, it was customary to apply to the proprietors for a renewal of the grant.

Upon the production of the proprietors' book, it appeared that no location had been made to Samuel Williams pursuant to the grant above mentioned. The book of grants and the book of locations were in the case.

The plaintiff then offered in evidence the record of a judgment in an action of trespass commenced in 1793, in which Ingell, the present defendant, was the plaintiff, and the plain-

tiff''s ancestors were the defendants. That action was referred, under a rule of court, and the referees reported that Ingell owned the *locus in quo* up to a certain line, and judgment was rendered upon their report. The land now demanded lies on the other side of that line.

The plaintiff offered no evidence of occupation by himself or those under whom he claimed.

The defendant introduced evidence in support of his title to the land.

*Coffin* and *Seth Williams*, for the plaintiff.

*Warren*, for the defendant.

SHAW C. J. afterwards delivered the opinion of the Court. This is purely a question of title, and it is difficult to perceive from the documents and other evidence furnished by the case, that either party has given any very satisfactory evidence of good and valid title. It becomes therefore necessary, to see who has the burden of proof, and to apply the familiar maxim of law applicable to such a case. In a controverted question of title, the plaintiff is bound to make out his case by satisfactory proof, and he must recover by the strength of his own title, not by the weakness of his adversary's. *Potior est conditio defendentis.* The question then is, whether the plaintiff has established a good title.

The plaintiff relied altogether upon a documentary title, not aided or strengthened in any respect by possession or occupation.

The plaintiff begins by offering a grant made by the proprietors of common and undivided lands in Taunton, to his ancestor Samuel Williams, in 1742. This is variously denominated in the case, a grant, or a claim for a grant, a pitch, a provisional grant, giving a claim, or inchoate right, but not a title, until examined, located and confirmed by a locating committee. It is testified by the proprietors' clerk, that such an entry as the one in question, is not a definitive grant, but that before it is deemed a complete title, a locating committee is to act upon it, and their report, locating and confirming the grant, and recorded in the book of locations, or possessions, makes a good title.

Were the record relied upon and found in the proprietors'

Williams
*v.*
Ingell.

*Oct. 25th.*

*April term
1839,
in Bristol.*

books, a distinct record of a vote of the proprietors, at a meeting duly held, granting to one of their number a parce' of the common land, to be held in severalty, and locating and describing it by definite and intelligible terms, we should entertain great doubts whether the effect of such a vote, in giving a title to take and hold in severalty, could be controverted by parol evidence. But if the entry in question is not the record of a vote of the proprietors, but may be either the act of the proprietors or the act of the clerk or other officer, if the book itself is ambiguous in this respect, we are inclined to the opinion, that the parol evidence is admissible, to show by whom, and with what intent, such an entry was made, and if it appears that it does not purport to be the act of the proprietors, but the act of the party claiming to have the land thus designated set off, or the act of the clerk, entering such claim, and that such entry is only one step towards obtaining a title, some further act of the proprietors or of a committee, appointed and authorized by them, must be returned 'and recorded, to give such first entry the effect of a grant, or title to hold in severalty. Besides, if such " grant " be construed into an authority to give a certain quantity of land to be set off' to be held in severalty, within certain bounds containing a larger quantity, then it would seem, that no title to any part is complete, to hold in severalty, until located by a committee. This would apply to the present case, if the grant was to have half an acre, between the highway and the river, and between Williams's house and Gilbert's orchard, if that description embraces more than half an acre.

But we have not thought it necessary to give any decisive opinion on the competency of this parol evidence, or its application to the present case, because the Court are of opinion, that, taking the record as it stands, it does not purport to be a grant to Samuel Williams. It runs thus : " Aug. 13, 1742. At the request of Samuel Williams Esq. is granted to the right of William Phillips, half an acre," &c. It does not purport to be a grant to Williams, or that Williams claimed under the right of Phillips, by assignment, by descent or otherwise. It may be that he acted as agent for some other person in making this request ; or that the proprietors or their agents did not choose to take the responsibility of deciding on the validity of

his claim under Phillips's right, if he made any ; but they meant to assign this small parcel to those who rightfully held under Phillips's right, leaving them to establish that title by grant, devise or descent, as the case might be. Therefore, unless Samuel Williams proved some title under Phillips, this grant did not enure to him. We may conjecture, from his making the request, that he had or claimed some interest under Phillips's right ; but the burden of *proof* is upon him, and conjecture is not sufficient. There is nothing from which the fact can legally be inferred, there is no occupation or possession to aid it. I do not understand, that in the wills of Samuel Williams, or his son Seth Williams, there was a special description of this land amongst the lands devised ; but only that there were general words, sufficient to pass it, if the devisors respectively were seised and had good title to it.

The plaintiff places some reliance on the suit and reference between the plaintiff's ancestors and the defendant, in 1793, in which the line of Ingell's estate was in controversy, and was settled by referees under a rule of court, and a judgment rendered on their award.

There the parties were reversed, Ingell was plaintiff and the Williamses were defendants, and the question was as to the extent of Ingell's title. We are to suppose that the referees applied the same rule above stated, that the plaintiff Ingell was to recover on the strength of his own title. They decided that Ingell's claim extended to a point within ten feet of the brook. But whether the Messrs. Williams had any title to the southwest of that line, the referees had no occasion to decide, and upon that question, therefore, their award can have no effect. As the premises in controversy in the present case do not extend north or east of the line thus established by the referees, their award has no tendency to show any title to these premises, in the plaintiff's ancestors.

On the whole, the Court are of opinion, that the plaintiff has not established his title, and cannot recover.

*Plaintiff nonsuit.*